UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| CHRIS HANSEN, | ) | No. 02 B 33776 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| JOEL A. SCHECHTER, Trustee, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 04 A 3438 |
| | ) | |
| 5841 BUILDING CORPORATION; | ) | |
| APMC OIL COMPANY, INC.; and | ) | |
| RICHARD STIEFEL, | ) | |
| | ) | |
| Defendants. | ) | Judge Goldgar |

## MEMORANDUM OPINION

Since at least 2000, debtor Chris Hansen has worked as an officer of several small, mostly unsuccessful companies that compound and blend motor oil. *See Schechter v. Hansen (In re Hansen)*, 325 B.R. 746, 751 (Bankr. N.D. Ill. 2005). In 2001, Hansen sold his house and used $100,000 of the proceeds to keep one of those companies, APMC Oil Company, afloat. The payments, though, were not made directly to APMC. Instead, Hansen transferred the money to another company, 5841 Building Corporation. 5841 then paid the money to APMC. Richard Stiefel was the president and majority shareholder of both APMC and 5841.

In 2004, chapter 7 trustee Joel A. Schechter filed this adversary proceeding under section 548 of the Bankruptcy Code against Stiefel, APMC, and 5841 to recover Hansen's payments as fraudulent transfers. Following the close of discovery, Stiefel moved for summary judgment,

contending he was not liable either as the "initial transferee" of 5841 or as an "entity for whose benefit such transfer was made." *See* 11 U.S.C. § 550(a)(1). In support of his motion, Stiefel duly filed the statement of facts required under Local Rule 7056-1. Schechter filed a memorandum opposing the motion and a Rule 7056-2(a) response. Schechter submitted no Rule 7056-2(b) statement of additional facts or any evidence of his own.

The matter is now fully briefed and ready for decision. For the reasons discussed below, Stiefel's motion for summary judgment will be granted.

### 1. Jurisdiction

The court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1334(b) and the district court's Internal Operating Procedure 15(a). This is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(H) and (O). The court may therefore enter a final judgment. *In re Smith*, 848 F.2d 813, 816 (7th Cir. 1988).

### 2. Facts

The material facts are brief and undisputed. APMC Oil Company was a small Illinois corporation, now dissolved, that compounded and blended motor oil. (P. 7056-2 Resp. at ¶ 2). APMC had its place of business at 5841 West 66th Street in Bedford Park, Illinois. (*Id.*). 5841 Building Corporation managed (and apparently still manages) the building at that address. (*Id.* at ¶ 1). Richard Stiefel was the president and majority shareholder of APMC and is the president and majority shareholder of 5841. (*Id.* at ¶ 3). In 2000 and 2001, Chris Hansen was vice-president of APMC. (*See* Stiefel Mot., Ex. C at 2); *see also Hansen*, 325 B.R. at 751.

In 1999, APMC received loans from Harris Bank totaling $3,345,000 and in return executed three promissory notes to the Bank. (P. 7056-2 Resp. at ¶ 8). The loans were secured

by mortgages on various commercial properties located on 66th Street in Bedford Park. (Stiefel Mot., Ex. D at 1-2). Stiefel signed each of the notes on APMC's behalf as its president. (*Id.*). Stiefel and Hansen also personally guaranteed APMC's obligations under the notes. (P. 7056-2 Resp. at ¶¶ 11-12).

As of September 2001, all the notes were in default. (*Id.* at ¶ 9). On October 1, 2001, Harris Bank accordingly filed an action in the Circuit Court of Cook County, Illinois, against APMC, Stiefel, Hansen, and several other defendants seeking to foreclose on the mortgages and to recover for breach of the notes.[1] (*Id.* at ¶ 16; Stiefel Mot., Ex. G). By January 14, 2005, the amount owed to Harris Bank as a result of the default was more than $3.8 million. (P. 7056-2 Resp. at ¶ 13).

In June 2001, Hansen sold his house in Lake Forest, Illinois, for $1.3 million, depositing $270,469 in his brokerage account with Fidelity Investments. *See Hansen*, 325 B.R. at 752. On December 26, 2001, Hansen transferred $75,000 from the Fidelity account to 5841. (P. 7056-2 Resp. at ¶ 14); *see also Hansen*, 325 B.R. at 752-53 & n.5. The next day, he transferred another $25,000 to 5841. (P. 7056-2 Resp. at ¶ 15); *see also Hansen*, 325 B.R. at 753.

None of the $100,000 Hansen transferred to 5841 in December 2001 was used to satisfy any of APMC's obligations to Harris Bank under the notes. (P. 7056-2 Resp. at ¶ 17). Instead, 5841 used the money to provide operating capital to APMC.[2] (*Id.*).

---

[1] The complaint also concerned a fourth note that three related entities – 5811 Building Corporation, 5829 Building Corporation, and 5831 Building Corporation – had given Harris Bank in 1999 in exchange for a $750,000 loan. (P. 7056-2 Resp. at ¶ 8). Stiefel signed that note as president of each of the corporations. (*Id.*).

[2] In his response to Stiefel's Rule 7056-1 statement, Schechter says he lacks knowledge sufficient to answer the assertion about 5841's use of the money and so will "stipulate" to it. (P. 7056-2 Resp. at ¶ 17). Nevertheless, he adds, it is "a question of fact for

-3-

### 3. Discussion

On the record presented, Stiefel is entitled to summary judgment. There is no genuine issue of material fact for trial, and the undisputed facts show that Stiefel is not liable to Schechter for Hansen's allegedly fraudulent transfers to 5841 – not as the "initial transferee" and not as an "entity for whose benefit [the] transfer was made." 11 U.S.C. § 550(a)(1).

#### a. Summary Judgment Standard

The summary judgment standard under Rule 56 is familiar: summary judgment may be entered when there is no genuine issue of material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c) (made applicable by Fed. R. Bankr. P. 7056); *Van Diest Supply Co. v. Shelby County State Bank*, 425 F.3d 437, 439 (7th Cir. 2005). On a motion for summary judgment, then, "[t]he court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) (internal quotation omitted).

Summary judgment is the "put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (internal quotation omitted). When a defendant moves for summary judgment, consequently, the plaintiff has the obligation to make out a prima facie case. To do so, he must adduce evidence on every element

---

this Court to determine whether the monies . . . were used to provide operating capital." (*Id.*). It is not. Questions of fact arise on summary judgment when the non-movant (1) disputes one of the movant's properly supported statements of material fact and (2) produces evidence from which the opposite conclusion could be drawn. To raise a question of fact about how the funds were used, Schechter had to deny Stiefel's statement and supply evidence supporting that denial. Schechter has done neither. On the contrary, he has "stipulate[d]" to the statement.

of his claim on which he will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Van Diest Supply*, 425 F.3d at 439. Failing that, summary judgment will be entered for the defendant. *Brummett v. Sinclair Broad. Group, Inc.*, 414 F.3d 686, 692-94 (7th Cir. 2005); *Hottenroth v. Village of Slinger*, 388 F.3d 1015, 1027 (7th Cir. 2004).

### b. Stiefel's Liability as the "Initial Transferee"

Stiefel is entitled to summary judgment because no evidence shows he was the "initial transferee" of Hansen's payments to 5841.

Section 548 of the Bankruptcy Code enables a trustee to avoid certain pre-petition transfers of property on the ground that the transfers were fraudulent. 11 U.S.C. § 548; *see Baldi v. Lynch (In re McCook Metals, L.L.C.)*, 319 B.R. 570, 586-87 (Bankr. N.D. Ill. 2005). Section 550, in turn, specifies the parties from whom the fraudulent transfers can be recovered. Under section 550(a)(1), Schechter can recover a transfer from the "initial transferee." *See* 11 U.S.C. § 550(a)(1). Although the Code does not define "transferee," *Bonded Financial Services, Inc. v. European American Bank*, 838 F.2d 890 (7th Cir. 1988), explains that a "transferee" has "dominion over the money or other asset, the right to put the money to one's own purposes." *Id.* at 893. The "initial" transferee is the first entity to have such a dominion or right. *Kepler v. Aetna Fin. Co. (In re Ausman Jewelers, Inc.)*, 177 B.R. 282, 286 (Bankr. W.D. Wis. 1995).

Stiefel was not the "initial transferee" of Hansen's payments. It is undisputed that Hansen made the payments to 5841, not to Stiefel himself. Moreover, nothing in the record shows that Hansen placed any restrictions on how 5841 used the money. Hansen may have intended the money to go to APMC's operations, but no evidence shows that 5841 was in any way legally bound to pass the money on. Schechter certainly offers no evidence. As far as

Hansen was concerned, apparently, 5841 had no obligation to pay APMC but could use the money as it pleased. Because 5841 was the first to receive the payments and had dominion over them – the right to use the funds as it pleased – 5841, not Stiefel, was the "initial transferee." *See Bonded*, 838 F.2d at 893.

Schechter insists that Stiefel was indeed the "initial transferee" even though Hansen's payments were made to 5841. He notes that Stiefel "was the president and majority shareholder of 5841." (P. Mem. at 5). "[O]ne could certainly argue," Schechter says, that Stiefel was the initial transferee based on his "ownership and management" of 5841. (*Id.*).

One could, but the argument would go nowhere. To go somewhere, Schechter would have to adduce evidence that 5841 was actually Stiefel's alter ego, making Stiefel the "initial transferee" of the payments. Several courts, including this one, have acknowledged or assumed the viability of such a theory. *See, e.g., Peterson v. Hofman (In re Delta Phones, Inc.)*, Nos. 04 B 823, 05 A 1205, 2005 WL 3542667, at *7 (Bankr. N.D. Ill. Dec. 23, 2005) (permitting trustee to amend complaint to allege alter ego claim against members of limited liability company); *Cuthill v. Kime (In re Evergreen Sec., Ltd.)*, 319 B.R. 245, 255-56 (Bankr. M.D. Fla. 2003) (assuming viability of theory but finding a failure of proof); *Carolyn's Kitchen, Inc. v. Cybergenics Corp. (In re Carolyn's Kitchen, Inc.)*, 209 B.R. 204, 209 (Bankr. N.D. Tex. 1997) (same).

No evidence in the record suggests that 5841 was Stiefel's alter ego, and Schechter points to none. Schechter notes that Stiefel was president and majority shareholder of 5841, but that is not remotely enough. A corporation is an entity distinct from its shareholders, directors, and officers. *In re Rehabilitation of Centaur Ins. Co.*, 158 Ill. 2d 166, 172, 632 N.E.2d 1015, 1017 (1994). To ignore a corporation's existence – a drastic step – there must be both (1) such a unity of interest and ownership that the separate personalities of person and corporation no longer

-6-

exist, and (2) circumstances under which adherence to the fiction of corporate separateness would promote injustice or inequity. *International Fin. Servs. Corp. v. Chromas Techs. Canada, Inc.*, 356 F.3d 731, 736 (7th Cir. 2004). No evidence here raises an inference of either one. As far as the record is concerned, 5841 and Stiefel were separate entities.[3]

Because 5841 was the first to receive Hansen's transfers, it was the "initial transferee" for section 550(a)(1) purposes, not Stiefel. Stiefel therefore cannot be liable to Schechter as an "initial transferee." Summary judgment for Stiefel will be entered on Schechter's "initial transferee" claim.

### c. Stiefel's Liability as an "Entity for Whose Benefit Such Transfer Was Made"

Stiefel is equally entitled to summary judgment on Schechter's claim that Stiefel was an entity for whose benefit Hansen's payments were made.

Under section 550(a)(1), a trustee can recover a fraudulent transfer, not only from the initial transferee, but also from "the entity for whose benefit such transfer was made." 11 U.S.C. § 550(a)(1). An "entity for whose benefit such transfer was made" is a "person who receives a

---

[3] In support of his argument, Schechter submits photocopies of 20 checks from late 2001 and early 2002, all written on 5841's checking account. Stiefel appears to have signed each of the checks, and eleven of them are made payable to "Cash." Schechter argues that these checks show Stiefel and 5841 were one and the same, making Stiefel the "initial transferee."

There are two problems with Schechter's argument. First, Schechter simply slapped the checks onto the back of his memorandum. He did not submit them with his Rule 7056-2(b) statement of additional facts because he did not file one. Under these circumstances, the checks are not cognizable as evidence. *See Raymond v. Ameritech Corp.*, 442 F.3d 600, 604 (7th Cir. 2006) (noting that trial courts are "entitled to expect strict compliance" with summary judgment procedures under the local rules). Second, even if they were cognizable, the checks would not justify an inference that Stiefel was abusing the corporate form. For all the record shows, the funds from those checks were used for some legitimate business purpose. To conclude without more that Stiefel pocketed the money would be speculation. Inferences based on speculation will not prevent summary judgment. *Rand v. CF Indus., Inc.*, 42 F.3d 1139, 1146 (7th Cir. 1994).

benefit from the initial transfer." *Bonded*, 838 F.2d at 896; *see also Danning v. Miller (In re Bullion Reserve of N. Am.)*, 922 F.2d 544, 547 (9th Cir. 1991). The classic example, not surprisingly, is "a guarantor or debtor – someone who receives the benefit but not the money." *Bonded*, 838 F.2d at 895. The guarantor benefits from the initial transfer because the transfer reduces his obligation on the guaranty. *See id.*; *see also McCook*, 319 B.R. at 590 (noting that a typical "transfer beneficiary" is "a party whose indemnification obligations or whose own debts are extinguished or reduced by the transfer").

Schechter offers no more support for his claim that Stiefel received a benefit from Hansen's payments to 5841 than he does for the claim that Stiefel was the initial transferee of those payments. Quite simply, nothing in the record shows that the payments reduced Stiefel's financial obligations in any way – neither "indemnification obligations" under a guaranty, *McCook*, 319 B.R. at 590, nor any other obligation. On the contrary, Schechter stipulates that 5841 used the funds, not to pay Harris Bank, but to keep APMC operating. Given the complete absence of evidence that Stiefel somehow benefited from the payments to 5841, Stiefel cannot be liable to Schechter as a transfer beneficiary.

Schechter argues that Stiefel's "control" of 5841 is enough in itself to make him a transfer beneficiary under section 550(a)(1). As evidence of that control, Schechter again points to Stiefel's positions as president and majority shareholder.[4]

This argument is not persuasive. The question whether "one's mere status as an officer or shareholder of a corporate transferee" provides a basis for recovery of a voidable transfer is

---

[4] Schechter also points to the checks attached to his memorandum. As discussed earlier, however, the checks are out of bounds and will not be considered. *See* discussion *supra*, n.3.

-8-

admittedly "a difficult one." L. Chek & V. Teofan, *The Identity and Liability of the Entity for Whose Benefit a Transfer Is Made Under Section 550(a): An Alternative to the Rorschach Test*, 4 J. Bankr. L. & Prac. 145, 170, 172 (1995). Some decisions do appear to authorize recovery on that basis. *See, e.g., Wieboldt Stores, Inc. v. Schottenstein*, 131 B.R. 655, 665-66 (N.D. Ill. 1991); *Nickless v. Golub (In re Worcester Quality Foods, Inc.)*, 152 B.R. 394, 404 (Bankr. D. Mass. 1993). One of these is *McCook*, in which the court held liable for transfers to a limited liability company its majority owner, manager, and chairman solely because of his "control" of the company (a term *McCook* did not define). *McCook*, 319 B.R. at 592.

The problem with *McCook* and the few other decisions authorizing this sort of status-based recovery is that they ignore the fundamental nature of corporations. As discussed earlier, a corporation is a legal entity separate from its shareholders, officers, and directors. 1 W. Fletcher, *Cyclopedia of the Law of Private Corporations* § 25 at 471 (1999). Indeed, "[s]eparate legal personality" is "an almost indispensable aspect" of a corporation, *First Nat'l City Bank v. Banco Para El Comercio Exterior De Cuba*, 462 U.S. 611, 625 (1983) (internal quotation omitted), and thus "[a] basic tenet of American corporate law," *Dole Food Co. v. Patrickson*, 538 U.S. 468, 474 (2003); *see also Stamp v. Inamed Corp.*, 777 F. Supp. 623, 626 (N.D. Ill. 1991) (calling the "entity theory" one of the "most important and pervasive principles underlying corporations law"). Only rarely will that separate existence be disregarded. *Dole*, 538 U.S. at 475.

Nothing in section 550(a)(1) indicates that corporate form can be thrust aside and all voidable transfers to a corporation recovered from its shareholders on the mere assumption that shareholders somehow automatically "benefit" from such transfers. If corporate existence is to be observed, transfers cannot be recovered even from a shareholder who by virtue of his majority ownership ostensibly "controls" the corporation. *See Stamp*, 777 F. Supp. at 626 (noting that

Case 04-03438    Doc 47    Filed 05/12/06    Entered 05/16/06 13:42:19    Desc Main
Document    Page 10 of 14

"the fact that one person owns all the stock [does not] make him and the corporation one and the same person") (internal quotation omitted); *see also* W. Fletcher, *supra*, § 25.10 at 486. Something more than mere status as a shareholder, officer, or director must be shown. *See Delta Phones*, 2005 WL 3542667, at *6 & n.4; *Tyler v. Capitol Chem. Indus., Inc. (In re Metro Paper, Inc.)*, 18 B.R. 56, 56 n.1 (Bankr. D.D.C. 1982) (refusing to impose liability on transferee's "principal officer and stockholder" since "merely naming defendants in their individual capacity is not sufficient to establish their liability separate and apart from that of the corporate entity"); *see also Ohio Corrugating Co. v. Security Pac. Bus. Credit, Inc. (In re Ohio Corrugating Co.)*, 70 B.R. 920, 925 (Bankr. N.D. Ohio 1987).

The better view – and the one consistent with corporate law – is that shareholders, officers, and directors are not liable for transfers to their corporation unless they actually received distributions of the transferred property (in which case they would be subsequent transferees under section 550(a)(2)), or a showing can be made to pierce the corporate veil. *See* L. Chek & V. Teofan, *supra*, at 172. Most cases in which shareholders or officers have been found responsible under section 550(a)(1) as beneficiaries of corporate transfers have involved some veil-piercing aspect. *See, e.g., Tavormina v. Weiss (In re Behr Contracting, Inc.)*, 79 B.R. 84, 87 (Bankr. S.D. Fla. 1987) (finding sole shareholder of corporate transferee liable as transfer beneficiary where corporation had "no assets or liabilities" and so was a mere shell); *Jacoway v. Anderson (In re Ozark Rest. Equip Co.*, 74 B.R. 139, 145 (Bankr. W.D. Ark.) (finding liability where corporate transferees "were utilized as the defendants' mere instrumentalities"), *aff'd in part*, 77 B.R. 686 (W.D. Ark. 1987), *aff'd in part, rev'd in part*, 850 F.2d 342 (8th Cir. 1988).

This case involves nothing of that kind. Schechter claims that Stiefel is on the hook for Hansen's payments because of Stiefel's status as an officer and majority shareholder of 5841,

nothing more. No evidence has been offered that Stiefel was the alter ego of 5841, that 5841 was Stiefel's "mere instrumentality," or that Stiefel abused the corporate form in any way. Without a showing sufficient to pierce the corporate veil, the separate corporate existence of 5841 must be respected. It cannot simply be assumed that Stiefel benefited from Hansen's payments to 5841.[5/] *See Delta Phones*, 2005 WL 3542667, at *6 & n.4; *Turner v. Phoenix Fin., LLC (In re Imageset, Inc.)*, 299 B.R. 709, 718 (Bankr. D. Me. 2003) (holding members' mere interests in limited liability company insufficient to render them beneficiaries of transfers made to the LLC); *Ohio Corrugating*, 70 B.R. at 925; *Metro Paper*, 18 B.R. at 56 n.1.

Because Schechter has supplied no evidence that Stiefel was "the entity for whose benefit" Hansen's payments to 5841 were made, summary judgment will also be entered for Stiefel on Schechter's "transfer beneficiary" claim.

### d. Schechter's Request to Amend

Citing *Delta Phones*, finally, Schechter requests leave to amend his complaint to add an alter ego theory. Adding that theory, he evidently believes, will stave off summary judgment, at least for now. *See Delta Phones*, 2005 WL 3542667, at *7-10 (granting trustee leave to amend to add alter ego claim and conditionally denying summary judgment).

Rule 15(a) does allow a party to amend its complaint with leave of court to change legal

---

[5/] None of this amounts to a finding that Stiefel did not in fact benefit from Hansen's payments to 5841. The conclusion is simply that Schechter has raised no issue of fact for trial on that score. As Chek and Teofan rightly note, in cases like this courts face a difficult choice between respecting the corporate form on the one hand and exercising the "flexibility to recover cleverly designed voidable transfers" on the other. L. Chek & V. Teofan, *supra*, at 172. The balance, this court believes, is best struck in favor of presuming a corporation to be legitimate and respecting its form, as corporate law would require outside of bankruptcy, until a good reason has been shown not to. In seemingly reversing the usual presumption, *McCook* strikes a difference balance.

theories or add new ones. Fed. R. Civ. P. 15(a) (made applicable by Fed. R. Bankr. P. 7015); *see* 6 C. Wright, A. Miller & M. Kane, *Federal Practice & Procedure* § 1474 at 536 (1990). Leave to amend should be "freely given when justice so requires," Fed. R. Civ. P. 15(a), and amendments should be allowed in the absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the opposing party, or futility of the amendment, *Foman v. Davis,* 371 U.S. 178, 182 (1962). If consistent with Rule 15(a), leave to change or add theories may be given even after a motion for summary judgment has been filed. *See, e.g., Verhein v. South Bend Lathe, Inc.,* 598 F.2d 1061, 1063 (7th Cir. 1979).

But there are limits. This circuit takes a dim view of requests of this kind made in response to summary judgment motions. *See, e.g., Bethany Pharmacal Co. v. QVC, Inc.,* 241 F.3d 854, 861-62 (7th Cir. 2001); *Speer v. Rand McNally & Co.,* 123 F.3d 658, 665 (7th Cir. 1997); *Shanahan v. City of Chicago,* 82 F.3d 776, 781 (7th Cir. 1996); *Sanders v. Venture Stores, Inc.,* 56 F.3d 771, 774-75 (7th Cir. 1995) (citing cases). Amendments are almost routinely denied when both the summary judgment motion and the resulting request to amend come after discovery has closed. *See, e.g., Bethany,* 241 F.3d at 861; *Speer,* 123 F.3d at 665; *Shanahan,* 82 F.3d at 781; *Sanders,* 56 F.3d at 774-75. Attempts to amend post-summary judgment and post-discovery typically involve undue delay, undue prejudice, or both. *See Delta Phones,* 2005 WL 3542667, at *9 n.6.

Both undue delay and undue prejudice are present here. The underlying bankruptcy case is now nearly four years old, and this adversary proceeding, filed on August 31, 2004, is almost two years old. Discovery (extended four times at Schechter's request) has been closed since September 30, 2005. Schechter had more than a year to seek leave to amend his complaint and allege an alter ego theory if he wanted to. He gives no reason why he waited until this late date –

well after the close of discovery and in the midst of briefing on summary judgment.

If Schechter's request is granted, furthermore, Stiefel will be unduly prejudiced. The addition of an alter ego theory will require reopening discovery – or adding the theory would have no point. Discovery on Schechter's new theory will be extensive, as discovery on alter ego claims always is, requiring a detailed examination of the affairs of 5841 and Stiefel's relationship with the corporation. Stiefel has already been subjected to discovery for more than a year, and discovery has been closed for months. Believing discovery to be well and truly closed, Stiefel went to the trouble and expense of filing a summary judgment motion -- and a successful one at that. It would be unfair now to put Stiefel to further expense, requiring him to start from scratch defending a claim that Schechter could have made and pursued long ago.

*Delta Phones* is no help to Schechter. In that case, the trustee was given leave to add an alter ego theory despite a fully briefed summary judgment motion because the defendants had sought summary judgment "right out of the box, only four months into the litigation and with discovery just underway." *Delta Phones*, 2005 WL 3542667, at *9. Discovery was still open when the trustee asked to amend; indeed, no discovery cut-off had yet been set.[6/] *Id.* at *7. The court accordingly found unconvincing the defendants' complaints of undue delay and prejudice. *Id.* at *8-9. In this case, by contrast, discovery is long closed, and the summary judgment motion prompting Schechter's belated effort to amend was filed after the close of discovery. Stiefel's assertions of undue delay and prejudice have a good bit more force than the assertions of the

---

[6/] The trustee in *Delta Phones* also responded to the defendants' summary judgment motion by properly invoking Rule 56(f), Fed. R. Civ. P. 56(f) (made applicable by Fed. R. Bankr. P. 7056), submitting the necessary supporting affidavit, and asking to take discovery on the alter ego theory. *Delta Phones*, 2005 WL 3542667, at *7. Schechter has not mentioned Rule 56(f), much less complied with it.

*Delta Phones* defendants.

The liberal policy on amendments to pleadings notwithstanding, there "must be a point at which a plaintiff makes a commitment to the theory of its case." *Johnson v. Methodist Med. Ctr. of Ill.,* 10 F.3d 1300, 1304 (7th Cir. 1993). That point has come and gone here. Schechter will not be permitted to amend his complaint.

### 4. Conclusion

The motion of defendant Richard Stiefel for summary judgment on the complaint of plaintiff Joel Schechter is granted. A separate order will be entered in accordance with this opinion.

Dated: May 12, 2006

ENTER: _____
A. Benjamin Goldgar
United States Bankruptcy Judge